Staples, J.,
delivered the opinion of the court.
*691 This is an appeal from, a decree of the circuit court •of Grayson county, in a cause wherein the administrator of Eli Davis was plaintiff, and John Dickenson and others were defendants. The record shows the following state of facts: Alexander S. Matthews and Granville H. Matthews, being the joint owners of a tract of land lying in Grayson county, executed a deed of trust thereon in the year 1858. A sale was after-wards made by the trustee; and the land having sold for more than was sufficient to satisfy the debts secured by the deed, the purchaser executed his three bonds for the surplus of the purchase money, to the ■said Alexander S. Matthews and Granville H. Matthews, jointly.
These bonds, it seems, were handed over by the trustee to Granville H. Matthews, who then lived in Grayson county; A. S. Matthews being at that time a resident of Wythe county. Shortly thereafter Gran-ville H. Matthews assigned and delivered the bonds to the defendant Dickenson, for a valuable consideration, paid in money and in bonds and notes upon third persons. Before this assignment to Dickenson, however, A. S. Matthews had sold the bonds to Eli Davis. Being then in the possession of G. H. Matthews, they were of course not delivered to Davis. The controversy here is between Davis’ administrator and Dickenson: each claiming title to the whole amount of the bonds under the respective assignments aforesaid. The question before us is as to the nature and extent of the interest acquired under these assignments. The learned judge of the circuit court was of opinion that if the deposition of A. S. Matthews is .read, the implied authority in such case of each to act for the other, is strengthened by the repeated acts of G. H. Matthews in respect to the several transactions which *692 gave rise to the bonds in controversy, which were approved by A. S. Matthews, and also by the fact of G. Matthews continuing in possession of the bonds. what were these repeated acts of G. H. Matthews apr x proved by A. S. Matthews does not appear. A care- ^ examination of the record wholly fails to disclose them. It is not proved that A. S. Matthews knew at the time of the execution of the bonds or of their delivery to G. H. Matthews. When he acquired this knowledge does not appear. If his deposition is competent evidence it would seem that the sale and assignment to Davis were made with the consent of G. H. Matthews, who promised to surrender the bonds to Davis, but in violation of that promise transferred them to Dickenson.
But if the bonds were put in the possession of G. H. Matthews with the consent of A. S. Matthews, that of itself would scarcely be sufficient to divest his interest even in favor of a bona fide purchaser. They must necessarily have remained in the possession of one or the other of the obligees; they could not be held by both. It is impossible that a purchaser could be misled, because the joint ownership, the joint interest, appeared on the face of the instruments for which he was nego-. tiating. In the case of a joint tenancy of personal property, the parties have equal rights as between themselves during the joint ownership. If one of them sells his interest, the purchaser becomes tenant in common with the other. But neither has any authority by virtue of that relation to dispose of the common property, unless indeed there be something in the nature of the commodity creating a presumption of a complete power of sale, as, for example, is sometimes the case of an article manufactured expressly for sale.
These principles apply as well to things in action as *693 in possession, to bonds and other evidences of debt, as well as to chattels. Bills of exchange and promissory notes, payable to two or more, are subject to a rule, and cannot be transferred by any less number than the whole. In Story on Bills, sec. 197, it is said: . _ , . . If a note is made payable to several persons, not partners, there the transfer can only be by a joint indorsement of all of them. See also Freeman on Co-tenancy and Partition, sec. 183, 194-5. If this be the rule with respect to negotiable paper, the legal title to which passes by mere indorsement and delivery, with how much greater show of reason does the principle apply to ordinary obligations not negotiable?
The law merchant encourages the free 'circulation of negotiable instruments, unaffected by secret liens and equities. The common law, on the other band, never recognized the assignment of choses in action. Our statute, it is true, now authorizes the assignee of a bond or note, for the payment of money, to bring suit in his own name; but the legal title still remains in the assignor, the assignee acquiring a mere equity standing in the shoes of the assignor, entitled to all his rights, remedies and securities, and, as a general rule, subject to all his duties and obligations. When, therefore, one of two obligees undertakes to transfer the bond, the extent of the transfer will depend upon the nature of his interest. Such interest, whatever it is, passes to the assignee; but nothing beyond that as against his coobligee, unless, indeed, there be some other element in the transaction in the nature of fraud, agency, or other circumstance, modifying the rights of the parties.
The cases cited by the learned counsel for the appellee are cases of assignments or pledges made by one of several copartners. The doctrine is well settled *694 that each partner occupies the position both of principal and agent. Each has ihe complete jus disponendi the whole partnership interests, and is considered ^he authorized agent of the firm during the existence of the partnership. This distinction between partners, and mere part owners of goods and chattels, in respect to the power of disposing of the entire interest, is recognized by all the authorities, and controverted by none I have seen. See Story on Partnerships, sec. 89;, Reid v. Hollingshead, 10 Eng. Com. L. R. 439; 2 Matthew’s Digest—Partnerships.
Tried by these principles, the sale and assignment made by A. S. Matthews to Eli Davis carried with it his interest in the bonds, which was one moiety of the purchase money, and the assignment by G. H. Matthews to the defendant Dickenson operated as a transfer of the other moiety to the latter.
It is however claimed by the administrator of Davis-that the bonds belonged solely to A. S. Matthews; that the latter having paid the whole amount of the-purchase money for the land upon' which the trust deed was given and on which these bonds originated,, he has an equitable claim to the whole, as well against G. H. Matthews as against his assignee. The only evidence in support of this claim is the deposition of' A. S. Matthews himself. At the time this deposition was taken, G. H. Matthews was dead; the only person who could throw any light upon the transaction. The question is therefore presented as to the competency of A. 8. Matthews to testify as to the matters to which his deposition relates. He is certainly incompetent according to the rules of the common law. The effect of his evidence, if it is to be believed, is to-vest in Davis’ estate a valid title to the whole amount of the bonds. If the estate of Davis fails to recover *695 the whole, it will have recourse direct and immediate upon A. S. Matthews. The latter is therefore directly interested in the result of this, suit. Is he rendered competent hy the statute? It is very true he is not a party to the contract between Dickenson and G. H. Matthews. But if Davis’ estate succeeds, A. S. Matthews.in effect establishes, as against G. H. Matthews, his claim to the subject matter of controversy. While the contest is nominally between the contending assignees, it involves directly the respective obligations and pretensions of the two assignors. They are the parties to the original transaction, and one of these being dead, both the spirit and the letter of the statute exclude the other as a witness.
The deposition of A. S. Matthews being out- of the case, there is no evidence in support of the claim asserted by Davis’ estate to the whole amount of the bonds under the assignment of A. S. Matthews.
It is therefore unnecessary to consider a question somewhat discussed by the counsel here, and that is, whether Alexander S. Matthews having permitted his cobbligee, G. H. Matthews', to retain possession of the bonds, he or his assignee will be permitted to assert an equitable right to the whole amount due as against Dickenson, an innocent purchaser, hlo such question is before us, because the record contains no proof of the claim to the whole. Our decision must be upon the case appearing upon the face of the bonds, and the facts conceded oh both.sides. Upon these, as already stated, the parties are each entitled to one moiety of the bonds as would their assignors if suing. The decree of the circuit court must therefore be reversed, and a decree entered in conformity with the views herein expressed.
*696 The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the said decree is erroneous. It is therefore decreed and ordered that the same be reversed and annulled, and that the appellee, John Dickenson, pay to the appellant his costs by him about the prosecution of his appeal here expended. And this court proceeding to render such decree in the premises as the said circuit court ought to have rendered, is of opinion, for the reasons aforesaid, that as to one-half of the three bonds in the proceedings mentioned, executed by Wright Wingate and Emanuel Long to Alexander S. Matthews and Granville H. Matthews, each for the sum of two hundred and sixty-six dollars and sixty-six and two thirds cents, with interest thereon from the 23rd day of August 1858, the assignment of said bonds in the proceedings mentioned made by Granville H. Matthews to John Dickenson was without effect to pass any title to the said John Dickenson; but that the title to the said half passed by the assignment ‘of said bonds in the proceedings mentioned made by Alexander S. Matthews to Eli Davis, appellant’s intestate, whilst, so far as duly appears, the title to the other half of said three bonds did pass by the assignment first mentioned to John Dickenson. It is, therefore, decreed and ordered that the injunction originally awarded in this cause be perpetuated, and that said John Dickenson credit to said Wingate & Long on the two bonds not yet sued on so much as together with the amount of the judgment enjoined as aforesaid will equal one-half of the money due by said three bonds, and, as to the amount so directed to be credited, be perpetually en *697 joined from collecting said bonds, and that the said John Dickenson pay to the appellant, Rufus Brown, administrator of Eli Davis, deceased, the costs by him expended, and by his said intestate expended, about the prosecution of this cause in said circuit court, &c.
Decree reversed.